SONKEN-GALAMBA CORPORATION, APPELLANT, V. ABRAHAM B. ALPIRN, APPELLEE.

292 N. W. 46

FILED MAY 10, 1940. No. 30825.

*Casey & Corenman,* for appellant.

*Monsky, Grodinsky, Marer & Cohen, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

SIMMONS, C. J.

Plaintiff sues to recover balances alleged to be due it for deliveries made under contracts for the sale of scrap metals. Defendant, by cross-petition, prayed for damages for plaintiff's failure to deliver the entire amount of metal covered by the contract. Defendant recovered on his cross-petition, and plaintiff appeals.

Plaintiff alleges: That, on June 18, 1937, it entered into two written contracts with the defendant, whereby the plaintiff agreed to sell, and the defendant agreed to buy, 500 tons of steel scrap iron and 200 tons of stove scrap iron, to be delivered at certain designated points and prices. The terms were "90% sight draft with documents attached, balance to be paid immediately on receipt and verification of material," shipment to be completed within 60 days (other conditions are not involved herein); that, from July 2, 1937, to August 20, 1937, it delivered 8 car-loads of steel, and from July 12, 1937, to August 10, 1937, it delivered 4 car-loads of stove iron to the defendant; that 90% of the purchase price was paid; that said 10% balances have not been paid except for a partial payment made September 7, 1937. Plaintiff prayed judgment for the unpaid balances. (A second cause of action is not involved in this appeal.)

Defendant admits the execution and delivery of the contracts, the delivery of the metal, with some variance as to weights and amounts not paid.

By cross-petition defendant alleged that plaintiff did not deliver all the metal called for by said contracts, that plaintiff breached the contract and refused to complete delivery, and that defendant went upon the open market and purchased metal to complete the contract at an increased price; and prayed for a judgment for damages because of such breach.

Plaintiff's reply and answer was a general denial.

The jury allowed the plaintiff the amount due on its balances and found for the defendant on his cross-petition. The amounts as such are not in dispute on this appeal. The question presented is that of the right of the defendant to recover on his cross-petition, the issue being whether or not plaintiff was justified in refusing to complete delivery because of defendant's failure to make payment of the 10% balances when demanded by plaintiff.

Both plaintiff and defendant are dealers in metals. Defendant purchased the metal to fill prior orders upon which he had contracted delivery. Shortly after the contracts between the plaintiff and defendant were made, there was a marked increase in the market price of these metals. Plaintiff shipped one car of steel on July 2, 1937. Plaintiff did not follow defendant's instructions as to the bank to which the draft was to be sent, and it was not paid the day received, although defendant paid it promptly when he was advised of it. Plaintiff attempted on July 7, 1937, to cancel both contracts because of that fact. Plaintiff proceeded thereafter to ship steel, and from July 21 to August 12 shipped six cars under one contract. From July 12, 1937, to August 10, 1937, plaintiff shipped four cars of stove iron under the other contract. The 90% was promptly paid on all shipments.

Beginning August 2, 1937, plaintiff began to demand the 10% balances on cars shipped. Upon defendant's failure to pay, plaintiff about August 14th refused to make further shipments, and defendant purchased other metal on the open market at an increase in price.

The reason given by the plaintiff for refusing to make additional shipments was that defendant had not paid the 10% balances. After August 12, further shipments were not made except one car which, by mistake of plaintiff's shipping department, was shipped on August 20, 1937.

The 10% balance was by the contract "to be paid immediately on receipt and verification of material." The parties agree that the purpose of this provision was to enable the buyer upon delivery to verify the material as to quality and

weight and to adjust freight charges. The defendant testified that he had the additional purpose of insuring full delivery under the contract. However, when the payments were demanded, the defendant did not give this as a reason for not paying. The evidence does not show when the defendant received verification of the shipments as to quality, weight, and freight, with the exception of the defendant's testimony that usually thirty days elapsed after shipment before verification was received although sometimes it might be more or less. While not very definite, the defendant's testimony further indicates that verification had not been received on any of the shipments at the time plaintiff refused to ship the balance of the metals.

The trial court instructed the jury that it was for them "to decide from the testimony introduced in this trial whether or not the conduct of defendant in the payment or failure to pay the 10% balances justified plaintiff in breaching the contract and in failing to deliver according to the terms thereof." The instructions are not attacked in this court by direct assignment of error, nor did the plaintiff request the giving of specific instructions. However, plaintiff contends that the defendant's failure to pay the 10% balances (coupled with defendant's insolvency, to which contention reference will be made hereafter) was a material breach of the contract; that the trial court erred in failing to instruct the jury that it amounted to a material breach as a matter of law; and that defendant should have been denied recovery on his cross-petition.

The contracts here were treated by both parties as instalment contracts. Section 69-445, Comp. St. 1929, provides: "When there is a contract to sell goods to be delivered by stated instalments, which are to be separately paid for, and * * * the buyer neglects or refuses to * * * pay for one or more instalments, it depends in each case on the terms of the contract and the circumstances of the case, whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether

the breach is severable, giving rise to a claim for compensation, but not to a right to treat the whole contract as broken." Discussing this provision, this court stated in *Nebraska Wheat Growers Ass'n v. Smith,* 115 Neb. 177, 187, 212 N. W. 39, that "a total default in payment of an instalment does not *ipso facto* at the election of the injured party terminate a contract of sale, but that its legal effect depends 'on the terms of the contract under the circumstances of the case.' "

"This rule makes the obligation of the innocent party depend upon the materiality of the breach committed by the wrong-doer." 2 Williston, Sales (2d ed.) 1194, sec. 467b. See 1 Uniform Laws Annotated (Sales) 258.

The legislature has "established a new test, which weighs the effect of the default, and adjusts the rigor of the remedy to the gravity of the wrong." *Helgar Corporation v. Warner's Features,* 222 N. Y. 449, 119 N. E. 113.

It is recognized that, strictly speaking, the contract here may not be one to sell "by stated instalments" and therefore not within the act. However, "the rule of the statute represents an endeavor to formulate what may be called the soundest conclusion from the common law," and, therefore, the problem here presented may be decided by the same test as that stated in the statute. 2 Williston, Sales (2d ed.) 1178, sec. 465b. Such a holding is in accord with the intent and purpose of the legislative act.

"The question of fact presented by a breach, such as is referred to by the statute, should, if the situation admits of doubt, be left to the determination of a jury." 2 Williston, Sales (2d ed.) 1178, sec. 465b.

The evidence, from its most favorable view to the plaintiff, presented a jury question.

Plaintiff complains that the court refused to admit evidence of the defendant's insolvency and reputation for non-payment of accounts. Plaintiff offered certain Dun & Bradstreet reports on the defendant, and stated that "reliance" on the reports "together with defendant's failure to pay as per the terms of the contract was the cause of plaintiff's

cancelation of the contracts." The trial court sustained objections to their admission. An examination of the tendered reports discloses that they were dated from June 18, 1938, to August 31, 1938. Obviously, reports made from 10 to 12 months after the cancelation of the contracts could not have been relied upon by the plaintiff in determining whether or not to cancel the contracts. No further discussion of that feature of the case is necessary.

No prejudicial error is found. The judgment of the trial court is

AFFIRMED.